REV. WILLIAM MASON; REV. PAUL KNAUER; JAMES BOYD AND GERTRUDE SYKES, PLAINTIFFS v. CITY OF PATERSON, *ET AL.*, DEFENDANTS.

BOARD OF ALDERMEN OF THE CITY OF PATERSON, A DULY ELECTED GOVERNING BODY OF THE CITY OF PATERSON, *ET AL.*, PLAINTIFFS v. ARTHUR C. DWYER, ACTING MAYOR AND PRESIDENT OF THE BOARD OF FINANCE OF THE CITY OF PATERSON, *ET ALS*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 6, 1972.

*Mr. Dennis J. Cummins, Jr.,* appeared for plaintiffs (Dkt. No. L–17449–71).

*Messrs. Miller & Reenstra* for plaintiffs (Dkt. No. L. 19197–71), (*Mr. Leonard S. Miller* appearing).

*Mr. Joseph A. LaCava* for defendants City of Paterson, City Clerk, Mayor, Clerk of the Board of Finance and Fire and Police Board (Dkt. No. L 17449–71) ; and for defendants Arthur C. Dwyer and Board of Commissioners of Assessment of Taxes (Dkt. No. L 19197–71), (*Mr. Harry Zax* appearing).

*Mr. Charles H. Roemer,* appeared for Commissioners of Assessment of Taxes, individually.

CRANE, A. J. S. C. These are actions in lieu of prerogative writs which have been consolidated. Each of the actions attacks the validity of various aspects of the structure of the government of the City of Paterson.

Since the essential facts are not in dispute the parties have elected to proceed in a summary manner pursuant to the provisions of *R.* 4:67.

In 1907 the Legislature enacted a series of statutes which were intended to establish a new form of government in the City of Paterson. *Lendrim v. Ryan,* 98 *N. J. L.* 322, 323 (Sup. Ct. 1923). Prior to that time the governmental powers were vested in a Mayor and a Board of Aldermen pursuant to the provisions of a special act creating the city charter. *L.* 1871, *c.* 325, *p.* 808 *et seq.,* which was enacted prior to the amendment of the Constitution of 1844 adopted in 1875 prohibiting private, local or special laws. *N. J. Const.* (1844), Art. IV, § VII, par. 4, *N. J. S. A., Const.,* at 622.

The statutes in question distributed powers formerly exercised by the Board of Aldermen to newly created boards. *Grosso v. Paterson,* 55 *N. J. Super.* 164, 170 (Law Div. 1959). *L.* 1907, *c.* 45, *p.* 79, now found in *N. J. S. A.* 40:174–6 *et seq.,* created the Board of Fire and Police Commissioners. *L.* 1907, *c.* 46, *p.* 89, now found in *N. J. S. A.* 40:186–5 *et seq.,* created the Board of Finance. *L.* 1907, *c.* 62, *p.* 114, now found in *N. J. S. A.* 40:175–9 *et seq.,* created the Board of Public Works.

The statute had the effect of stripping the Board of Aldermen of virtually all its legislative powers and vesting them in the newly created boards, all of which are appointed by the Mayor. It is undisputed that Paterson is the only municipality in the State functioning under such a distinctive form of government. Its unique quality was recognized in *Fielding v. Board of Ed., Paterson,* 76 *N. J. Super.* 50–57 (Ch. Div. 1962), wherein it was said by Judge Collester:

Paterson of course, has a unique form of government in this State. It is sometimes referred to as the strong type of government, where its primary governmental functions are controlled by boards appointed by the mayor.

Shortly after the enactment of the statutes the Attorney General brought a proceeding in the nature of *quo warranto* to test their validity. The Supreme Court, in *McCarter v. McKelvey*, 78 *N. J. L.* 3 (Sup. Ct. 1909), held that even though the statutes applied only to cities having a population between 100,000 and 200,000, they did not violate the provision of the then existing Constitution relating to private, special or local laws. The decision was affirmed by the Court of Errors and Appeals in *Attorney General v. McKelvey*, 78 *N. J. L.* 621 (1910). At that time Paterson had a population of 125,600; Camden had a population of 94,538; and the population of the City of Trenton was 96,815. (See the attached Schedule of Population.) The possibility that Camden and Trenton would shortly fall within the statutory class undoubtedly had a great influence on the decision. The court commented:

In form, therefore, the act is general, and, while at the time of its adoption it may have applied to Paterson alone, the Legislature must have anticipated that the time was not far distant, probably not farther than the census of the current year, when Camden and Trenton would come within the class." [78 *N. J. L.* at 626]

With all due deference to the court, its interpretation of the intent of the Legislature was apparently mistaken. It is curious to note that between the time of the argument of the case before the Court of Errors and Appeals, November 24, 1909, and the date the decision was filed, June 20, 1910, the statutes in question were all amended to change the population limits to a range of between 110,000 and 200,000. *L.* 1910, *c.* 292, *p.* 520; *L.* 1910, *c.* 293, *p.* 522; *L.* 1910*, c.* 294, *p.* 524. The statutes were approved on April 12, 1910, taking effect immediately.

In 1920, when the population of Camden had risen to 118,700 and the population of Trenton was 123,356, the Legislature amended the statute relating to the Board of Finance to limit the class to cities having a population between 125,000 and 200,000. *L.* 1920, *c.* 308, *p.* 557. Nothing was done at that time about the population limits as they existed in the statutes creating the Board of Fire and Police Commissioners or the Board of Public Works. However, in 1923 all three statutes were once again amended to establish the population limits between 133,000 and 200,000, *L.* 1923, *c.* 1, *p.* 11; *L.* 1923, *c.* 2, *p.* 13; *L.* 1923, *c.* 3, *p.* 15, where they have remained to date.

Ordinarily trial courts are required to avoid constitutional issues unless their determination is imperative in the disposition of the litigation. *Tonsorial Inc. v. Union City,* 115 *N. J. Super.* 33 (Law Div. 1971). Here, however, the lines are clearly drawn, the issue is inescapable.

Acts of the Legislature are presumptively valid. *State v. Profaci,* 56 *N. J.* 346, 349 (1970). This is especially so when a statute has been in force for a long period of years. *Gibraltar Factors Corp. v. Slapo,* 23 *N. J.* 459, 463 (1957). In relation to statutes dealing with the internal affairs of municipalities based upon a population classification the test is whether "population bears a reasonable relation to the necessities and proprieties of the various kinds of municipal government." *Bucino v. Malone,* 12 *N. J.* 330, 345 (1953). To be valid the classification must "rest upon distinctions that are substantial and not merely illusory." *Raymond v. Teaneck Tp.,* 118 *N. J. L.* 109, 111 (E. & A. 1936). An arbitrary classification will not be permitted to stand. *Kudlich v. Griffin,* 88 *N. J. L.* 573, 578 (Sup. Ct. 1916). In *McCran v. Ocean Grove,* 96 *N. J. L.* 158 (E. & A. 1921) it was stated that:

In our view, an act is equally special whether it confers upon a single municipality substantial powers in addition to those possessed and enjoyed by other municipalities of the same class; or whether, as to a single municipality, it places substantial restrictions and limita-

tions upon the powers conferred while like powers are enjoyed and exercised by other municipalities of the class free from such restrictions and limitations. [at 163]

The context in which a statute operates is an important factor in judging whether a law is general or special. *Batistich v. Brennan,* 45 *N. J.* 533, 535 (1965). The substance and necessary operation of the statute must be considered as well as the form. *In re Freygang,* 46 *N. J. Super.* 14, 22 (App. Div. 1957), aff'd 25 *N. J.* 357 (1957). In form the statutes under consideration are general in nature; however, the effect of the various amendments has demonstrated that the legislative purpose was to create a special form of government for the City of Paterson. It is not denied that Paterson's unique structure of government finds no counterpart in any other municipality of the State. It is conceded that in all other forms of municipal government local legislative functions are performed by elected representatives. When a law by the application of its terms is designed to operate only in a specified locality of the State, satisfactory reasons must be found to exclude it from the prohibition against local laws. *Wanser v. Hoos,* 60 *N. J. L.* 482 (E. & A. 1897). Here the legislative history has shown a continuous effort to exclude other cities of the State having nearly the same population from the operation of the act. The objects excluded are of determining significance in deciding whether an act is special or general. *Harvey v. Essex County Board of Freeholders,* 30 *N. J.* 381, 389 (1959); *Scott v. Bloomfield,* 94 *N. J. Super.* 592, 598 (Law Div. 1967), aff'd 98 *N. J. Super.* 321 (App. Div. 1967). No logical reason can be perceived as to why essentially all local legislative functions in Paterson must be performed by officials appointed by the Mayor while they are performed by elected representatives in all other municipalities of the State. Nor is there any explanation why municipalities of nearly similar size are excluded from the operation of the acts. *Cf. Alfred Vail Mut. Ass'n v. New Shrewsbury,* 58 *N. J.* 40, 50 (1971). It is apparent that the

classification is illusory and that the constitutional provisions against special laws have been violated. *N. J. Const.* (1947), Art. IV, § VII, par. 9 and its predecessor, *N. J. Const.* (1844), Art. IV, § VII par. 4.

It has been suggested by counsel for the city that if a determination of unconstitutionality is made that it should apply only to the amendatory legislation and not to the original enactments of 1907. A glance at the schedule of population will demonstrate the effect of such a suggestion. If the amendments were held invalid and the acts of 1907 permitted to stand, Paterson's unique form of government would then be inflicted upon Elizabeth, Camden and Trenton. Such a bizarre result is certainly to be avoided. In any event, it is apparent that the arbitrary classifiication existed in the original acts of 1907 as well as in the amendatory acts of 1910, 1920 and 1923, *supra*.

Plaintiffs have asserted other grounds based upon provisions of the United States Constitution, *i. e.*, denial of equal protection of the laws, denial of a republican form of government, denial of the right of suffrage, and taxation without representation. In view of the determination of the court it will not be necessary to discuss these issues.

In the sixth count of the complaint filed by Rev. William Mason and others, it is contended that the Board of Education of the City of Paterson is "not truly representative of the citizens of the City." However, the Board of Education was not served with the notice of motion for summary disposition and this claim is deemed to have been abandoned.

The fifth count of the complaint filed by the Board of Aldermen and others deals with *N. J. S. A.* 40:171–174 which provides for the appointment of commissioners of assessment of taxes in cities having a population of between 100,000 and 300,000. Since the statute apparently affects a number of cities other than Paterson, no attack is made upon its constitutional validity. See *Livelli v. Hoboken,* 78 *N. J. L.* 245 (Sup. Ct. 1909). However, the plaintiffs contend that *N. J. S. A.* 40:48–1 requires that such a board

"could not come into being until created by the adoption of an ordinance by the governing body," which has not been done.

The position of the plaintiffs is not tenable. Here the offices themselves were created by the Legislature. The mandatory language of the statute, "there shall be appointed by the mayor," leaves no room for doubt. Where an office is created by statute no ordinance on the part of the local governing body is necessary. See *Jersey City v. Dept. of Civil Service,* 7 *N. J.* 509, 524 (1951) ; *Handlon v. Belleville,* 4 *N. J.* 99, 108 (1950).

 The claims as to the invalidity of the payment of overtime compensation to the Commissioners of Assessment of Taxes is apparently abandoned, the parties having submitted no supporting evidence. In any event, they appear to be of little importance or merit. The claims for counsel fees are not cognizable in this court at this time in view of the provisions of R. 4 :42–9.

 The changes in local government which will be brought about as a result of the determination in this case undoubtedly may be of considerable significance to some citizens and officials of the City of Paterson. While there is no inherent right of local self-government, *Wagner v. Newark,* 24 *N. J.* 467 (1957), and consequently vested rights are not involved, nevertheless the court ought to avoid the creation of chaotic conditions, *Mauk v. Hoffman,* 87 *N. J. Super.* 276, 283 (Ch. Div. 1965), and provide for the continuation of the orderly functions of government. Consequently in the exercise of the court's inherent authority to control the execution of its own orders, the order to be entered in conformity with this opinion will provide an opportunity to the citizens of the City of Paterson to initiate proceedings to avail themselves of any of the many options available for the government of municipalities under *N. J. S. A.* 40 :69A–1 *et seq.,* as was politely suggested in *Schwartz v. Board of Aldermen, Paterson,* 106 *N. J. Super.* 208, 209 (App. Div. 1969).

## SCHEDULE OF POPULATION
### FOR
### PATERSON, JERSEY CITY, ELIZABETH, CAMDEN AND TRENTON

1900-1970

U. S. Census Figures

| | 1900 | 1910 | 1920 | 1930 | 1940 | 1950 | 1960 | 1970 |
|---|---|---|---|---|---|---|---|---|
| Paterson | 105,171 | 125,600 | 135,875 | 138,513 | 139,656 | 139,336 | 143,663 | 144,824 |
| Jersey City | 206,433 | 267,779 | 298,103 | 316,715 | 301,173 | 299,017 | 276,101 | 260,545 |
| Elizabeth | 52,130 | 73,409 | 95,783 | 114,589 | 109,912 | 112,817 | 107,698 | 112,654 |
| Camden | 75,935 | 94,538 | 116,309 | 118,700 | 117,536 | 124,555 | 117,159 | 102,551 |
| Trenton | 73,307 | 96,815 | 119,289 | 123,356 | 124,697 | 128,009 | 114,167 | 104,638 |